IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NERBASKA

| | | |
|---|---|---|
| YANIER GARCIA JIMENEZ, | ) | Case No. |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JEROME KRAMER, Lincoln County Sheriff; PETER BERG, Director, United States Immigration and Customs Enforcement St. Paul Field Office; TODD M. LYONS, Acting Director, United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary, United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States; MARCO RUBIO, United States Secretary of State; DONALD J. TRUMP, President of the United States, in their official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) | **PETITION FOR WRIT OF HABEAS CORPUS** |
| Respondents. | ) | |

## INTRODUCTION

1. Yanier Garcia Jimenez was swept up in the recent immigration raids at Glenn Valley Foods. She has been separated from her young children for over a month—detained hundreds of miles from home. Garcia Jimenez has a pending asylum application and poses no threat to the public.

2. Because of her clean criminal record and strong community ties, an immigration judge (IJ) ordered Garcia Jimenez's release on a $15,000 bond. Ex. 1, Order of the Immigration Judge (July 10, 2025); Ex. 2, Bond Memorandum of the Immigration Judge (July 16, 2025). The IJ determined that Garcia Jimenez poses no

danger to the community. Consistent with the order, Garcia Jimenez posted bond the next day. Ex. 3, ICE Form I-352.

3.    ICE, however, refuses to release Garcia Jimenez from custody, relying on a federal regulation that gives DHS *unilateral* authority to block an IJ's custody order. Under that "automatic stay" regulation, 8 C.F.R. § 1003.19(i)(2), if DHS disagrees with an IJ's custody determination, DHS can file a boilerplate notice of intent to appeal that automatically stays the IJ's order. In other words, the prosecuting officials who failed to convince the IJ to keep Garcia Jimenez detained in the first place can unilaterally block the IJ's order and force continued detention.

4.    Garcia Jimenez now languishes in jail for the duration of the bond appeal, or even longer, despite a valid order mandating her release. As applied to this case, the government's use of the automatic stay regulation is an unconstitutional deprivation of due process and *ultra vires*.

5.    Garcia Jimenez seeks habeas relief under 28 U.S.C. § 2241, which is the proper vehicle for challenging her unlawful detention.

6.    She respectfully requests that the Court find her detention unlawful and unconstitutional and issue a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to immediately release her from custody. In the alternative, she respectfully requests the Court order Respondents to show cause why this Petition should not be granted within three days.

## CUSTODY

7.  Garcia Jimenez is currently in the custody of the Lincoln County Detention Center in North Platte, Nebraska. She is in the physical custody and direct control of Respondents and their agents. Although Garcia Jimenez is in physical custody in Lincoln County, she is detained by Immigration and Customs Enforcement (ICE) and has been in ICE custody since June 10, 2025.

## JURISDICTION AND VENUE

8.  This Court has jurisdiction under 28 U.S.C. § 2241 and 28 U.S.C. § 1331.

9.  Venue is proper in this District under 28 U.S.C. § 1391 and 28 U.S.C. § 2242 because Garcia Jimenez is confined in this District, at least one Respondent is in this District, Garcia Jimenez's immediate physical custodian is in this District, and a substantial part of the events giving rise to the claims in this action occurred in this District. *See Trump v. J. G. G.*, 145 S. Ct. 1003, 1005–06 (2025) (per curiam) ("For core habeas petitions, jurisdiction lies in only one district: the district of confinement" (internal quotation marks and citation omitted)).

## HABEAS CORPUS

10. A petitioner is entitled to habeas relief if she demonstrates that her detention violates the United States Constitution or federal law. 28 U.S.C. § 2241.

11. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 20 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return

"within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

12. The Court has inherent power to release the petitioner pending review of her petition. *See Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986).

## PARTIES

13. Respondent Jerome Kramer is the Lincoln County Sheriff and has physical and administrative custody over Garcia Jimenez. He is named in his official capacity.

14. Respondent Peter Berg is the Director of the ICE St. Paul Field Office. He is a legal custodian of Garcia Jimenez and is named in his official capacity.

15. Respondent Todd M. Lyons is the Acting Director of ICE. He is a legal custodian of Garcia Jimenez and is named in his official capacity.

16. Respondent Kristi Noem is the Secretary of the United States Department of Homeland Security (DHS). She is a legal custodian of Garcia Jimenez and is named in her official capacity.

17. Respondent Pamela Jo Bondi is the Attorney General of the United States Department of Justice. She is a legal custodian of Garcia Jimenez and is named in her official capacity.

18. Respondent Marco Rubio is the United States Secretary of State. He is a legal custodian of Garcia Jimenez and is named in his official capacity.

19. Respondent Donald J. Trump is the President of the United States. He is a legal custodian of Garcia Jimenez and is named in his official capacity.

## FACTUAL ALLEGATIONS

**A. Background**

20. Garcia Jimenez is a mother to three young children, two of whom were born in Nebraska. Her children are 10, 5, and 3 years old. As a single mother, Garcia Jimenez is responsible for caretaking and providing financially to ensure her children's wellbeing and safety. Without their mother, her children are suffering—and Garcia Jimenez is heartbroken.

21. Garcia Jimenez has tried to do things the right way. She has no criminal record and has never had any legal issues until the current civil proceedings. She has lived and worked in Nebraska since 2019, after fleeing Mexico to escape violence. She is currently seeking legal status through asylum. She works hard, pays taxes, and contributes to the Nebraska community.

22. On June 10, 2025, Garcia Jimenez worked her usual shift as an employee of the Glenn Valley Foods meatpacking plant in Omaha, Nebraska. While she was working, ICE carried out a large-scale raid of the plant. Nearly 100 people were arrested, and more than 70 were taken into custody. Garcia Jimenez was one of the people arrested and detained.

23. The raid marked an escalation in immigration enforcement: Instead of focusing on immigrants with serious criminal backgrounds, ICE detained longstanding community members with close ties to Nebraska and no criminal history.

24. Some detainees were immediately deported or relocated. The remaining detainees, including Garcia Jimenez, were transferred to the Lincoln County Detention Center in North Platte. Garcia Jimenez remains in custody on civil immigration charges.

### B. Detention and Bond Hearing

25. Congress granted the Attorney General discretion to decide whether to detain or release certain noncitizens pending a removal decision. *See* 8 U.S.C. § 1226(a). The Attorney General has delegated that authority to IJs. 8 C.F.R. §§ 1003.19, 1236.1. The discretionary detention provision, 8 U.S.C. § 1226(a), applies only to noncitizens without serious criminal convictions. It contrasts with the mandatory detention provision, 8 U.S.C. § 1226(c), which applies to noncitizens convicted of certain criminal offenses or involved in terrorist activities and requires continued detention.

26. Because Garcia Jimenez has no criminal record, she was arrested and detained under Section 1226(a).

27. When a noncitizen is detained under Section 1226(a), DHS makes the initial custody determination, but the detainee can request reconsideration by an IJ. Here, DHS initially detained Garcia Jimenez without bond. Garcia Jimenez then requested a bond redetermination hearing in front of an IJ.

28. At the bond redetermination hearing on July 10, the IJ heard evidence and argument from Garcia Jimenez and the government. Garcia Jimenez emphasized her children's need for her care and presence. DHS did not argue that Garcia Jimenez

6

is a flight risk nor public danger. *See* Ex. 2. Instead, DHS argued for the first time that Garcia Jimenez is subject to mandatory detention under a different provision, 8 U.S.C. § 1225(b)(2)(A), which governs the inspection process for noncitizen "applicants for admission"—new arrivals to the country.

29.   In accordance with decades of practice, the IJ rejected DHS's novel argument that Garcia Jimenez is subject to mandatory detention. The IJ also made specific findings of fact that Garcia Jimenez is not a danger or substantial flight risk and ordered Garcia Jimenez be released on bond. Garcia Jimenez posted a $15,000 bond the next day.

30.   Meanwhile, DHS filed a Form EOIR-43 "Notice of Intent to Appeal the Custody Redetermination," unilaterally triggering the automatic stay provision of 8 C.F.R. § 1003.19(i)(2). Filing that form blocked the IJ's order, at least for the pendency of the appeal to the Board of Immigration Appeals (BIA).

31.   In other words, DHS—the prosecutor—is not bound by the IJ's determination. The prosecutor disagreed with the IJ's decision and unilaterally overrode the order by filing a simple Form EOIR-43.

32.   Garcia Jimenez now remains in custody in contravention of the IJ's order. DHS's appeal to the BIA can take months. And as explained more fully below, even resolution of the appeal may not immediately end the automatic stay.

7

### C. Automatic and Discretionary Stay Regulations

33. The relevant regulations provide two distinct mechanisms for staying an IJ's custody order while the government appeals the decision: (1) discretionary stays from the BIA, and (2) automatic stays like the one used here.

34. Under the first mechanism—discretionary stay—DHS files a motion and must persuade the BIA that a stay is warranted. 8 C.F.R. § 1003.19(i)(1). The BIA serves as a neutral adjudicator and weighs the merits of DHS's position. The BIA ultimately makes the decision about whether to grant the stay. DHS could have used that mechanism in this case but did not.

35. Instead, DHS used the second mechanism: the automatic stay. This mechanism involves no neutral adjudicator considering the merits. Rather, it allows the prosecutor—who lost before the IJ—to unilaterally stay the IJ's decision.

36. Regulations provide that DHS's automatic stay will lapse in 90 days absent a BIA decision on the appeal. 8 C.F.R. § 100.36(c)(4). But there are multiple avenues for extension. For example, if the BIA does not issue a decision in the 90-day window, DHS can then seek an additional discretionary stay from the BIA. 8 C.F.R. § 1003.6(c)(5). The automatic stay remains in effect for another 30 days while the BIA decides whether to grant a discretionary stay. *Id.*

37. Likewise, even if the BIA rules in favor of Garcia Jimenez on appeal and authorizes her release on bond, that release is automatically stayed for five more business days to give DHS a chance to refer the case to the Attorney General. 8 C.F.R. § 1003.6(d). If DHS refers the case to the Attorney General, the automatic

8

stay is extended for another 15 days. *Id.* The Attorney General may then stay release for the pendency of the case. *Id.* There is no prescribed time limit for final resolution of the custody determination, meaning an individual may remain in detention indefinitely.

38. In sum, Garcia Jimenez has no way of knowing how long this automatic stay will last and has no opportunity to challenge the stay. In practice, the automatic stay regulation renders the IJ's custody decisions ineffectual: If DHS disagrees with a custody decision, it can keep Garcia Jimenez detained for a *minimum* of 90 days, without a truly discernable end point.

39. Meanwhile, Garcia Jimenez is in custody and her conditions of confinement are indistinguishable from criminal incarceration: She is separated from her children, housed in a facility with criminal defendants, and subject to Lincoln County Detention Center's detention rules.

## LEGAL FRAMEWORK

40. The Due Process Clause of the Fifth Amendment guarantees that no person in the United States shall be deprived of liberty without due process. U.S. Const. amend. V. These substantive and procedural due process protections apply to all people, including noncitizens, regardless of their immigration status. *Trump v. J.G.G.*, 604 U. S. ---145 S. Ct. 1003, 1006 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306, 113 S. Ct. 1439

(1993)). The automatic stay of Garcia Jimenez's release violates her rights to substantive and procedural due process.

41. The automatic stay regulation is also an *ultra vires* regulation that unlawfully grants authority to DHS that Congress has delegated only to the Attorney General.

### A. Substantive Due Process

42. The Due Process Clause provides heightened protection against government interference with certain fundamental rights—and freedom from detention lies at the heart of the Due Process Clause's protections. Detention by the government violates due process in civil proceedings *unless* "a special justification . . . outweigh[s] the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, (2001).

43. The automatic stay regulation was originally enacted in October 2001, in response to the September 11 terrorist attacks, without any opportunity for public comment.

44. Its enactment marked a drastic change in practice. Before the automatic stay, there was only one route to stay an IJ's custody determination: a discretionary stay from the BIA. The Immigration and Nationality Service (DHS's predecessor) was required to demonstrate to the BIA that it was likely to succeed on the merits and would suffer irreparable harm in the interim. The automatic stay provided a second,

much easier route: simply filing a short Form EOIR-43, without any need for an adjudicator to weigh in.

45. The purported purpose of the automatic stay is to protect the public and "enhance agencies' ability to effect removal should that be the ultimate final order in a given case." *Executive Office of Immigration Review; Review of Custody Determination*, 71 Fed. Reg. 57873, 57874 (Oct. 2, 2006).

46. But in Garcia Jimenez's case, DHS did not present *any* evidence or argument that she is a flight risk or danger to the community. *See* Ex. 2 (noting the only issue DHS reserved for appeal is the novel mandatory custody claim). After a full hearing, the IJ determined that Garcia Jimenez is not a danger or substantial flight risk. *Id.* To the extent the government has concerns about safety or flight, the IJ already addressed them.

47. The government has no special or compelling justification to continue detaining Garcia Jimenez, and certainly not an interest that outweighs her interest in avoiding government restraint. *See Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1077 (N.D. Cal. 2004) ("The regulation, which permits unilateral government detention of individuals without a case-by-case determination after a reasoned finding that they do not pose threat to safety or a risk of flight, violates the Due Process Clause because no special justification exists that outweighs the individual's constitutionally protected interest in avoiding physical restraint."); *Ashley v. Ridge*, 288 F. Supp. 2d 662, 669 (D.N.J. 2003) ("[T]he Government has not shown that any 'special

11

justification' exists which outweighs Petitioner's constitutional liberties so as to justify his continued detention without bail.").

48. Finally, a less-restrictive means exists through which DHS can obtain a stay: the discretionary stay regulation requiring DHS to seek an emergency stay from the BIA. 8 C.F.R. § 1003.19(i)(1). That regulation protects DHS's interest in obtaining a stay without unduly infringing on Garcia Jimenez's liberty. *See, e.g., Dep't of State v. Munoz*, 602 U.S 899, 910 (2024) ("When a fundamental right is at stake, the government can act only by narrowly tailored means that serve a compelling state interest.").

49. The government's application of the automatic stay regulation and continued detention of Garcia Jimenez violate her substantive due process rights.

### B. Procedural Due Process

50. Due process also requires an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976). Garcia Jimenez received no such opportunity: Although she received a full bond hearing in front of the IJ, the prosecutor's unilateral stay of the IJ's order rendered that hearing meaningless.

51. To determine whether government conduct violates procedural due process, the Court weighs three factors: (1) the private interest affected by the government action; (2) the risk that current procedures will cause an erroneous deprivation of the private interest, and the extent to which that risk could be reduced

by additional safeguards; and (3) the government's interest in maintaining the current procedures. *Id.* at 335.

### *Private Interest*

52.  Garcia Jimenez's private interest is the right to be free from government detention. This interest is of the highest constitutional import.

53.  Garcia Jimenez's conditions of detention further tip this factor in her favor. *See Günaydın v. Trump*, __ F. Supp. 3d __, File No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154, at *7 (D. Minn. May 21, 2025). She a single mother of three young children and detained nearly 300 miles from her home. Loved ones have to transport her children over eight hours roundtrip to see their mom.

54.  Despite being in custody for a civil offense, she is detained with and subject to the same rules as those incarcerated for criminal offenses. She cannot move freely, spend more than 15 minutes per day outside, or tuck her children into bed at night. She has very little privacy—she is housed with over 30 other women and shares a cell. She faces months in continued detention pending the bond appeal.

55.  The private interest here is fundamental: freedom from detention. It weighs heavily in the weighing of the *Mathews* factors.

### *Risk of Erroneous Deprivation*

56.  Similarly, the risk of erroneous deprivation of Garcia Jimenez's liberty is substantial. Garcia Jimenez prevailed at the bond redetermination hearing. The stay is not based on any new evidence, finding of legal error, or finding of likelihood of success on appeal.

57. Its application permits prosecuting officials who participated in the adversarial process—and lost—to unilaterally override the adjudicator's decision. "Such a rule is anomalous in our legal system," and it represents a basic conflict that has been disapproved of in this context and others. *Günaydın*, 2025 WL 1459154, at *8; *see also Marcello v. Bonds*, 349 U.S. 302, 305–06, 75 S. Ct. 757 (1955) (holding that officer adjudicating immigration case cannot undertake prosecutorial role in the same matter); *Ashley,* 288 F. Supp. 2d at 671 ("It produces a patently unfair situation by taking the stay decision out of the hands of the judges altogether and giving it to the prosecutor who has by definition failed to persuade a judge in an adversary hearing that detention is justified.") (citation altered).

58. The automatic stay runs counter to the typical judicial process. A stay is an extraordinary remedy. In the civil context, a stay is never granted as of right. Rather, the movant must show a likelihood of success on the merits, a risk of irreparable injury, and that the balance of interests tips in the movant's favor. In contrast, the automatic stay regulation does not require the government to make any showing to an adjudicator. And here, the risk is greater than an ordinary civil case. Detention is at issue. Garcia Jimenez is facing a loss of liberty.

59. Garcia Jimenez also has no method to challenge the automatic stay decision. She is at the whim of DHS with no meaningful opportunity for review. Under these procedures, the risk of erroneous deprivation is great.

60. At the same time, there is a readily available substitute procedure that could ameliorate these risks: DHS could seek an emergency discretionary stay from the BIA pursuant to 8 C.F.R. § 1003.19(i)(1).

*Government Interest*

61. The government's interest here carries little weight in comparison.

62. The stated purpose of the automatic stay provision is to prevent the noncitizen from fleeing and protect the public from potential harm. But the government presented no argument or evidence that either of those concerns are present for Garcia Jimenez. After a full hearing and presentation of evidence, the IJ made specific findings that Garcia Jimenez is not a danger to the community. To the extent the government has concerns about safety or flight, the IJ already addressed them.

63. On balance, the private interests affected and the risk of erroneous deprivation under the current procedures greatly outweigh the government's interest. Process is not meaningful when a prosecutor who loses in front of an IJ can unilaterally override the IJ's decision. *See Ashley*, 288 F. Supp. at 668 ("[T]he automatic stay provision renders the Immigration Judge's bail determination an empty gesture.").

**C. Ultra Vires**

64. The automatic stay regulation exceeds the authority given to the Attorney General by Congress and unlawfully eliminates IJs' discretionary authority to make custody determinations.

65. Congress gave the Attorney General discretion to decide whether to release detained noncitizens pending removal proceedings if they have not been convicted of certain criminal offenses and are not linked to terrorist activities. *See* 8 U.S.C. § 1226(a), (c). The Attorney General has delegated this authority to IJs, who have discretion to determine whether to release these noncitizens on bond. 8 C.F.R. §§ 1003.19, 1236.1; *see also* 28 U.S.C. § 510 (permitting the Attorney General to delegate her function to officers or employees within the Department of Justice).

66. Congress has not delegated this authority to DHS. There is no statutory authority for DHS to unilaterally stay an IJ's bond determination. DHS's use of the automatic stay is an unlawful use of the discretionary power granted to the Attorney General and "has the effect of mandatory detention of a new class of aliens, although Congress has specified that such individuals are not subject to mandatory detention." *Zavala*, 310 F. Supp. 2d at 1079; *see also Ashley*, 288 F. Supp. 2d at 673 ("As Congress specifically exempted aliens like Petitioner from the mandatory detention of § 1226(c), it is unlikely that it would have condoned this back-end approach to detaining aliens like Petitioner through the combined use of § 1226(a) and § 3.19(i)(2).").

67. Here, the IJ determined that Garcia Jimenez is not a danger to the community or a sufficient flight risk and ordered DHS release her on bond.

## FIRST CAUSE OF ACTION

### Violation of Fifth Amendment – Substantive Due Process

68. Garcia Jimenez realleges and incorporates the allegations contained in the preceding paragraphs of the petition as if fully set forth herein.

69. The U.S. Constitution establishes the right to due process for all persons within the United States, including noncitizens, whether their presence here is lawful or unlawful.

70. Substantive due process asks whether a person's life, liberty, or property is deprived without sufficient purpose. There is no question that Garcia Jimenez has been deprived of her liberty.

71. The government's continued detention of Garcia Jimenez is not supported by any special interest or compelling justification that outweighs her liberty interest. The application of the automatic stay violates Garcia Jimenez's substantive due process rights.

## SECOND CAUSE OF ACTION

### Violation of Fifth Amendment – Procedural Due Process

72. Garcia Jimenez realleges and incorporates the allegations contained in the preceding paragraphs of the petition as if fully set forth herein.

73. Due process requires the opportunity to be heard at meaningful time and in a meaningful manner. Garcia Jimenez has not received that opportunity here.

74. Garcia Jimenez's liberty interest and the risk of erroneous deprivation far outweigh the government's interest in continued detention. There is also an

alternative process available that allows the government to request a stay from the BIA. The automatic stay violates Garcia Jimenez's procedural due process rights.

## THIRD CAUSE OF ACTION

### *Ultra Vires* Regulation

75. Garcia Jimenez realleges and incorporates the allegations contained in the preceding paragraphs of the petition as if fully set forth herein.

76. Congress gave the Attorney General authority to detain or release noncitizens, pending their removal proceedings. The Attorney General has delegated that authority to IJs.

77. The automatic stay regulation, 8 C.F.R. § 1003.19(i)(2), purports to give DHS the authority to unilaterally override the IJ's decision. It is unlawful and *ultra vires*.

## PRAYER FOR RELIEF

Petitioner Yanier Garcia Jimenez respectfully requests this Court grant the following:

(1) Assume jurisdiction over this matter;

(2) Order the immediate release of Petitioner pending these proceedings, pursuant the Court's inherent power;

(3) If Petitioner is not immediately released, order Respondents not to transfer Petitioner out of this District during the pendency of these proceedings, to preserve jurisdiction;

(4) Declare that Petitioner's detention violates the Fifth Amendment and is *ultra vires*;

(5) Issue a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and order Respondents to immediately release Petitioner from custody in accordance with the bond order from IJ Larsen, or, in the alternative, order Respondents to show cause why this Petition should not be granted within three days;

(6) Award Petitioner reasonable attorneys' fees and costs; and

(7) Grant any further relief the Court deems just and proper.

Dated this 1st day of August, 2025.

Yanier Garcia Jimenez,

PETITIONER.

By: /s/ *Sydney L. Hayes*
Sydney L. Hayes, #27051
Kaitlin A. Madsen, #27359
Daniel J. Gutman, #26039
Alex Arkfeld, #27277
GUTMAN LAW GROUP
P.O. Box 485
Omaha, Nebraska 68101
(402) 570-8836
sydney@gutmanllc.com

ATTORNEYS FOR PETITIONER

## VERIFICATION

Pursuant to 28 U.S.C. § 2242 and 28 U.S.C. § 1746, I declare under penalty of perjury that the facts set forth in the foregoing Petition for a Writ of Habeas Corpus are true and correct.

Executed this 31 day of July, 2025.

_____
Yanier Garcia Jimenez