IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| YANIER GACRIA JIMENEZ, | | |
| Petitioner, | | |
| vs. | | |
| JEROME KRAMER, Lincoln County Sheriff; PETER BERG, Director, United States Immigration and Customs Enforcement St. Paul Field Office; TODD M. LYONS, Acting Director, United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary, United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States; MARCO RUBIO, United States Secretary of State; DONALD J. TRUMP, President of the United States, in their official capacities, | | 4:25-cv-3162 <br><br> THE UNITED STATES' RESPONSE TO THE PETITION FOR WRIT OF HABEAS CORPUS |
| Respondents. | | |

## **INTRODUCTION**

Currently in separate removal proceedings before the Executive Office of Immigration Review's Immigration Court, Petitioner Yanier Garcia Jiminez, an undocumented alien, challenges her temporary detention while the decision is made regarding her removal. She thereby petitions this Court for a Writ of Habeas Corpus under 28 U.S.C. § 2241. In doing so, she challenges a lawfully enacted regulation (8 C.F.R. § 1003.19(i)(2)) authorizing her detention through an automatic stay, but critically, that automatic stay merely implements detention Congress authorized under 8 U.S.C. § 1225(b)(2). Therefore, to grant her Petition, Petitioner asks this Court to set aside a lawfully enacted regulation and statute, finding both unconstitutionally applied, as alleged violations of the Due Process Clause of the United States Constitution. But as discussed below, the Supreme Court has long recognized Congress's broad

power and immunity from judicial control to expel aliens from the country and to detain them while doing so. *See e.g., Shaughnessy v. United States*, 345 U.S. 206, 210 (1953); *Carlson v. Landon*, 342 U.S. 524, 538 (1952). The United States' temporary detention of Petitioner in no way exceeds this broad authority and does not deprive Petitioner of Due Process. *See Demore v. Kim*, 538 U.S. 510, 531 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."). Because Petitioner's temporary detention is lawful, her Habeas Petition fails, and the United States, including all federal Respondents in their official capacities, hereby seeks dismissal of the Petition.

## **BACKGROUND**

Petitioner is a native of Mexico. (Declaration of Deportation Officer Lanette Hernandez, Filing No. 17, p.3 ¶ 12). She entered the United States at or near McAllen, Texas on or about July 12, 2019. (*Id.* at p. 4, ¶13). She was not admitted or paroled after inspection by an immigration officer. (*Id.* at ¶14).

Petitioner was arrested on June 10, 2025, in Omaha, Nebraska, upon Homeland Security Investigations' reasonable belief of her unlawful presence in the United States. (*Id.* at ¶15). The Department of Homeland Security (DHS) subsequently placed her in removal proceedings pursuant to 8 U.S.C. § 1229a by issuing her a Notice to Appear charging her as being inadmissible for being present in the United States without being admitted, under 8 U.S.C § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.") (*See id.* ¶15 & Filing No. 17-1, Ex. A, Notice to Appear, Form I-862).

During removal proceedings, aliens deemed "applicants for admission" shall be detained. 8 U.S.C. § 1225(b)(2)(A) provides: "Subject to subparagraphs (B) and (C), in the case of an alien

2

who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." Congress defined "applicant for admission" as the following: "An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1); *see Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (explaining that every "alien who arrives in the United States or is present in this country but has not been admitted is treated as an applicant for admission." (quotations and punctuation omitted)).

Petitioner was issued a Notice to Appear before Immigration Judge Alexandra Larsen on July 10, 2025. (Filing No. 17, p.4 ¶ 16). Petitioner requested a bond redetermination hearing, which was held on July 10, 2025. (*Id.*). At the hearing, DHS argued Petitioner was an applicant for admission under 8 U.S.C. § 1225(a)(1) and was therefore ineligible for bond. (*Id.*).

The immigration judge disagreed and ordered Petitioner to be released on bond in the amount of $15,000. (*Id.*). That same day, DHS filed its notice of intent to appeal the custody determination, triggering the automatic stay of Petitioner's release on bond pursuant to 8 C.F.R. § 1003.19(i)(2). (*Id.* at ¶17; Ex. B, Form EOIR-43 Notice of ICE Intent to Appeal Custody Redetermination, Filing No. 17-2). Then DHS filed its formal Notice of Appeal with the Board of Immigration Appeals (BIA) on July 14, 2025. (Filing No. 17, ¶17; Notice of Appeal, Ex. C, Filing No. 17-3).

The limited issue on appeal regarding Petitioner's release on bond is expeditiously moving through the BIA, with a briefing schedule already established: DHS has until August 12, 2025, to

3

file its initial brief and Petitioner would have until September 2, 2025 to respond. (*See* Filing No. 17, p. 4, ¶18 & Board of Immigration Appeals Briefing Schedule & Filing No. 17-4, Ex. D). The automatic stay will cease upon a decision of the BIA or 90 days, whichever is shorter. *See* 8 C.F.R. § 1003.6(c)(4). Petitioner's removal proceedings continue before Judge Larsen, as Petitioner's next hearing is now scheduled for August 14, 2025. (*Id.* at ¶19; Notice of Hearing, Filing No. 17-5, Ex. E).[1] Petitioner remains detained in a detention center in North Platte, NE. (Filing No. 1, p. 6 ¶ 24).

Petitioner challenges her temporary detention pursuant to the automatic stay by filing this Petition for Writ of Habeas Corpus on August 1, 2025, against Respondents Jerome Kramer, Lincoln County Sheriff; Peter Berg, Director, United States Immigration and Customs Enforcement St. Paul Field Office; Todd M. Lyons, Acting Director, United States Immigration and Customs Enforcement; Kristi Noem, Secretary, United States Department of Homeland Security; Pamela Bondi, Attorney General of the United States; Marco Rubio, United States Secretary of State; and Donald J. Trump, President of the United States, all in their official capacities. *See generally* Filing No. 1. Petitioner also filed a Motion for Order to Show Cause, directing the Respondents to file a return within three days of the Court's Order granting the show cause. (Filing No. 2). On August 1, 2025, the Court granted the Motion and ordered the Respondents to be served and the Petitioner to file proof of said service. (Filing No. 13). The Court stated Respondents shall file "a return on the Order to Show Cause why the Petition for Writ of

---

[1] In subsequent cases, Immigration Judge Alexandra Larsen has accepted DHS's position concerning undocumented aliens being deemed applicants for admission pursuant to 8 U.S.C. § 1225(a)(1) and denied them bond pursuant to § 1225(b)(2)(A). (*See e.g.*, Filing No. 17, pp. 4-5, ¶20; Filing Nos. 17-6, Ex. F; 17-7, Ex. G; 17-8, Ex. H; & 17-9, Ex. I).

Habeas Corpus should not be granted within three business days after Petitioner serves them." (*Id.* at p.3). The "federal respondents" hereby file this response as their return.[2]

## STANDARD OF REVIEW

In a petition for a writ of habeas corpus, the petitioner is challenging the legality of her restraint or imprisonment. *See* 28 U.S.C. § 2241. The burden is on the petitioner to show the confinement is unlawful. *See Walker v. Johnston*, 312 U.S. 275, 286 (1941). Specifically here, Petitioner challenges her temporary civil immigration detention pending her removal proceeding.

Judicial review of immigration matters, including of detention issues, is limited. *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999); *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489-492 (1999); *Miller v. Albright*, 523 U.S. 420, 434 n.11 (1998); *Fiallo v. Bell*, 430 U.S. 787, 792 (1977); *Reno v. Flores*, 507 U.S. 292, 305 (1993); *Hampton v. Mow Sun Wong*, 426 U.S. 88, 101 n.21 (1976) ("the power over aliens is of a political character and therefore subject only to narrow judicial review").  The Supreme Court has thus "underscore[d] the limited scope of inquiry into immigration legislation," and "has repeatedly emphasized that over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." *Fiallo*, 430 U.S. at 792 (internal quotation omitted); *Matthews v. Diaz*, 426 U.S. 67, 79-82 (1976); *Galvan v. Press*, 347 U.S. 522, 531 (1954).

The plenary power of Congress and the Executive Branch over immigration necessarily encompasses immigration detention, because the authority to detain is elemental to the authority to deport, and because public safety is at stake.  *See Shaughnessy v. United States*, 345 U.S. 206, 210 (1953) ("Courts have long recognized the power to expel or exclude aliens as a fundamental

---

[2] The federal respondents are all but Lincoln County Sherrif Jerome Kramer and will be collectively referred to as the United States.

sovereign attribute exercised by the Government's political departments largely immune from judicial control."); *Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of this deportation procedure."); *Wong Wing v. United States*, 163 U.S. 228, 235 (1896) ("Proceedings to exclude or expel would be vain if those accused could not be held in custody pending the inquiry into their true character, and while arrangements were being made for their deportation."); *Demore v. Kim*, 538 U.S. 510, 531 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process.")

## ARGUMENT

Petitioner's temporary detention pursuant to the automatic stay of 8 C.F.R. § 1003.19(i)(2) is reinforced by Congress's command to detain her throughout her removal proceedings pursuant to 8 U.S.C. § 1225(b)(2). Moreover, this temporary detention does not violate Due Process. Because Petitioner cannot show her temporary detention violates the law, her Petition must be dismissed. *See* 28 U.S.C. § 2241.

## I.     PETITIONER IS LAWFULLY DETAINED PURSUANT TO 8 U.S.C. § 1225(B)(2).

The current operative mechanism of Petitioner's detention is an automatic stay of release on bond for a maximum of 90 days under 8 C.F.R. § 1003.19(i)(2), but this confinement is statutorily authorized by 8 U.S.C. § 1225(b)(2), which requires detention throughout her entire removal proceedings.

Pursuant to 8 U.S.C. § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a." 8 U.S.C. § 1225(b)(2)(A). The Supreme Court has held that 8 U.S.C. § 1225(b)(2)(A) is a mandatory detention statute and that aliens detained pursuant to that provision

are not entitled to bond. *Jennings*, 583 U.S. at 287 ("Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens.").

Petitioner falls squarely within the ambit of Section 1225(b)(2)(A)'s mandatory detention requirement as she is an "applicant for admission" to the United States. As described above, an "applicant for admission" is an alien present in the United States who has not been admitted. 8 U.S.C. § 1225(a)(1). Congress's broad language here is unequivocally intentional—an undocumented alien is to be "deemed for purposes of this chapter an applicant for admission." *Id.* Regardless of Petitioner's characterization that "an applicant for admission" should only include "new arrivals to the country," (*see* Filing No. 1, p.7 ¶ 28), she is "deemed" an applicant for admission based on her failure to seek lawful admission to the United States before an immigration officer, which has not been disputed. *See generally* Filing No. 1. And because Petitioner has not demonstrated to an examining immigration officer that she is "clearly and beyond a doubt entitled to be admitted," her detention is mandatory. 8 U.S.C. § 1225(b)(2)(A). Thus, the Petitioner is properly detained pursuant to 8 U.S.C. § 1225(b)(2)(A), which mandates that she "shall be" detained.

The Supreme Court has confirmed an alien present in the country but never admitted is deemed "an applicant for admission" and that "detention must continue" "until removal proceedings have concluded" based on the "plain meaning" of 8 U.S.C. § 1225. *Jennings v.* 583 U.S. at 289 & 299. At issue in *Jennings* was the statutory interpretation. The Supreme Court reversed the Ninth Circuit Court of Appeal's imposition of a six-month detention time limit into the statute. *Id.* at 297. The Court clarified there is no such limitation in the statute and reversed on these grounds, remanding the constitutional due process claims for initial consideration before the lower court. *Id.*

Applying this reasoning, the United States District Court for the District of Massachusetts recently confirmed in a habeas action that an unlawfully present alien, who had been unlawfully present in the country for approximately 20 years, was nonetheless an "applicant for admission" upon the straightforward application of the statute. *See Webert Alvarenga Pena, Petitioner, v. Patricia Hyde, et al., Respondents.*, No. CV 25-11983-NMG, 2025 WL 2108913 (D. Mass. July 28, 2025). The Court explained this resulted in the "continued detention" of an alien during removal proceedings as commanded by statute. *Id.*

Immigration Judge Larsen agrees. While Petitioner places a tremendous amount of weight on Judge Larsen's July 10, 2025 bond ruling, (*see e.g.,* Filing No. 1, p. 12, ¶50), the judge has since denied bond to aliens in subsequent cases pursuant to 8 U.S.C. § 1225(b)(2). (*See, e.g.*, Filing No. 17, pp. 4-5, ¶20; Filing Nos. 17-6, Ex. F; 17-7, Ex. G; 17-8, Ex. H; & 17-9, Ex. I). But if an immigration judge were to release an alien on bond, like Petitioner, who is subject to mandatory detention, DHS's invocation of the stay of release pending appeal in 8 C.F.R. § 1003.19(i)(2) not only is not contrary to law but also ensures that DHS has an opportunity to vindicate Congress's mandatory detention scheme.

Because Petitioner shall be detained during her removal proceedings and her proceedings are uncontrovertibly ongoing, her temporary detention is lawful. Any argument by Petitioner that her detention exceeds statutory authority is clearly invalid and should be rejected. (*See* Filing No. 1, pp.16-17, ¶¶ 64-67 & p.18, ¶¶ 75-77).

## II.    PETITIONER'S TEMPORARY DETENTION DOES NOT OFFEND DUE PROCESS.

Petitioner claims that her current temporary detention pending removal is "without sufficient purpose" and "the government's interest carries little weight," leading to their claims of

procedural due process and substantive due process violations. (*See* Filing No. 1, ¶. 15 ¶ 61 & p.17, ¶70). Congress and the Supreme Court disagree.

As mentioned above, Congress broadly crafted "applicants for admission" to include undocumented aliens present within the United States like Petitioner. *See* 8 U.S.C. § 1225(a)(1). And, Congress directed aliens like the Petitioner to be detained during their removal proceedings. 8 U.S.C. § 1225(b)(2)(A); *Jennings*, 583 U.S. at 297 ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded."). In so doing, Congress made a legislative judgment to detain undocumented aliens during removal proceedings, as they—by definition—have crossed borders and traveled in violation of United States law. And as explained above, that is the prerogative of the legislative branch serving the interest of the government and the United States.

The Supreme Court has recognized this profound interest. *See Shaughnessy v. United States*, 345 U.S. 206, 210 (1953) ("Courts have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."). And with this power to remove aliens, the Supreme Court has recognized the United States' longtime Constitutional ability to detain those in removal proceedings. *Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of this deportation procedure."); *Wong Wing v. United States*, 163 U.S. 228, 235 (1896) ("Proceedings to exclude or expel would be vain if those accused could not be held in custody pending the inquiry into their true character, and while arrangements were being made for their deportation."); *Demore v. Kim*, 538 U.S. 510, 531 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."); *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018) ("Congress has authorized immigration officials to detain some classes of aliens during the

course of certain immigration proceedings. Detention during those proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made.").

In another immigration context (aliens already ordered removed awaiting their removal), the Supreme Court has explained that detaining these aliens less than six months is presumed constitutional. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). But even this presumptive constitutional limit has been subsequently distinguished as perhaps unnecessarily restrictive in other contexts. For example, in *Demore*, the Supreme Court explained Congress was justified in detaining aliens during the entire course of their removal proceedings who were convicted of certain crimes. 538 U.S. at 513. In that case, similar to undocumented aliens like Petitioner, Congress provided for the detention of certain convicted aliens during their removal in 8 U.S.C. § 1226(c). *See id.* The Court emphasized the constitutionality of the "definite termination point" of the detention, which was the length of the removal proceedings. *Id.* at 512 ("In contrast, because the statutory provision at issue in this case governs detention of deportable criminal aliens *pending their removal proceedings,* the detention necessarily serves the purpose of preventing the aliens from fleeing prior to or during such proceedings. Second, while the period of detention at issue in *Zadvydas* was "indefinite" and "potentially permanent," *id.,* at 690–691, 121 S.Ct. 2491, the record shows that § 1226(c) detention not only has a definite termination point, but lasts, in the majority of cases, for less than the 90 days the Court considered presumptively valid in *Zadvydas*.").[3] In light of Congress's interest in dealing with illegal immigration by keeping specified aliens in

---

[3] In 2018 the Court again highlighted the significance of a "definite termination point" for detention of certain aliens pending removal. *See Jennings v. Rodriguez*, 583 U.S. 281, 304 (2018).

detention pending the removal period, the Supreme Court dispensed of any Due Process concerns without engaging in the "*Mathews v. Eldridge* test" *See id. generally*.

Following this precedent, the United States District Court for the District of Massachusetts (case mentioned above) dismissed a habeas action, finding that it was not a violation of due process to detain an undocumented alien during the course of his removal proceedings. *See Webert Alvarenga Pena, Petitioner, v. Patricia Hyde, et al., Respondents.*, No. CV 25-11983-NMG, 2025 WL 2108913, at *1 (D. Mass. July 28, 2025).

Likewise, Petitioner's temporary detention pending her removal proceedings does not violate Due Process. She has been detained for roughly eight weeks as her *process* unfolds. Specifically, her next removal hearing is coming up before the immigration judge on August 14, 2025, and her expedited narrow appeal on the issue of release on bond is before the BIA with initial briefing to be filed August 12, 2025. (Filing No. 17, p. 4, ¶¶18-19; Filing Nos. 17-4 & 17-5; Exs. D & E). Resolution one way or another is undoubtedly forthcoming. Petitioner's ample available process in her current removal proceedings demonstrate no lack of procedural due process—nor any deprivation of liberty "sufficiently outrageous" required to establish a substantive due process claim. *See generally Reed v. Goertz*, 598 U.S. 230, 236 (2023); *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 628 (8th Cir. 2001), *as corrected* (Mar. 27, 2001), *as corrected* (May 1, 2001). Congress simply made the decision to detain her pending removal which is a "constitutionally permissible part of that process." *See Demore v. Kim*, 538 U.S. 510, 531 (2003).

## CONCLUSION

Petitioner fails to establish her temporary detention is unlawful. Her Petition for Writ of Habeas Corpus should be dismissed.

11

Respectfully submitted,

PETER BERG, Director, United
States Immigration and Customs
Enforcement St. Paul Field Office; TODD
M. LYONS, Acting Director, United
States Immigration and Customs
Enforcement; KRISTI NOEM, Secretary,
United States Department of Homeland
Security; PAMELA BONDI, Attorney
General of the United States; MARCO
RUBIO, United States Secretary of
State; DONALD J. TRUMP, President of
the United States, in their official
capacities, Respondents,

LESLEY A. WOODS
United States Attorney
District of Nebraska


By:    s/ Eric W. Synowicki
       ERIC W. SYNOWICKI, # 26403
       Assistant U.S. Attorney
       1620 Dodge Street, Suite 1400
       Omaha, NE  68102-1506
       Tel:  (402) 661-3700
       Fax:  (402) 661-3081
       E-mail:  eric.synowicki@usdoj.gov


## CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d)(4), I hereby certify this brief complies with the requirements of NECivR 7.1(d)(1). Relying on the word-count function of Microsoft Word for Office 365 MSO, this document contains 3,517 words. The word-count function was applied to all text, including the caption, headings, footnotes, and quotations. I also hereby certify that no generative artificial intelligence program was used in drafting this document.

                s/ Eric W. Synowicki
                Assistant U.S. Attorney